UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
KATHLEEN McFALL,

|  |  |
|---|---|
| Plaintiff, | **OPINION AND ORDER** |
| -against- | 19 Civ. 11581 (JCM) |

EUGENE SCALIA, *SECRETARY, U.S.*
*DEPARTMENT OF LABOR*,

Defendant.
---------------------------------------------------------------X

Plaintiff Kathleen McFall brings this action pursuant to 5 U.S.C. § 7703 and Title VII of

the Civil Rights Act of 1965 ("Title VII") against Defendant Eugene Scalia in his former

capacity as Secretary of the United States Department of Labor ("Defendant" or the

"Department"), alleging five causes of action: (1) that the Merit System Protection Board's

("MSPB") decision affirming the Department's termination of Plaintiff's employment was

arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence; (2)

race discrimination; (3) sex discrimination; (4) imposition of a hostile work environment; and (5)

retaliation under Title VII. (Docket No. 1).[1]

Currently before the Court is Defendant's motion for partial summary judgment, pursuant

to Rule 56 of the Federal Rules of Procedure, on Plaintiff's non-discrimination, civil service

claim, which seeks to reverse the decision of the MSPB ("Motion"). (Docket Nos. 154, 155).

Plaintiff opposed the Motion, (Docket No. 156), and Defendant replied, (Docket No. 163).  For

the reasons set forth below, Defendant's motion for partial summary judgment is granted.

---

[1] The parties have consented to the undersigned for all purposes, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the
Federal Rules of Civil Procedure. (Docket No. 97).

## I.     BACKGROUND

The following facts are taken from the parties' affidavits and exhibits,[2] as well as the

MSPB administrative record and the administrative law judge's ("AJ") decision affirming

Plaintiff's termination. (Docket Nos. 154, 155, 156, 157, 163).  Plaintiff's Statement of Material

Facts, submitted pursuant to Local Rule 56.1 of the United States District Courts for the

Southern and Eastern Districts of New York, (Docket No. 156-1), was only considered to the

extent it was consistent with the administrative record since an appeal from that record presents

only a question of law. *See Just Bagels Mfg., Inc. v. Mayorkas*, 900 F. Supp. 2d 363, 372 n.7

(S.D.N.Y. 2012) ("[in] an appeal based on an administrative record [Rule 56.1] submissions are

not necessary as the case on review presents only a question of law") (collecting cases); *see also*

*Marro v. Nicholson*, No. 06-CV-6644 (JFB)(ARL), 2008 WL 699506, at *5 (E.D.N.Y. Mar. 12,

2008) (holding that in "mixed cases" (involving both discrimination and non-discrimination

claims) the Court must confine its review of the "non-discrimination claim [to] the

administrative record") (citation and internal quotation omitted).  The following facts are

construed in the light most favorable to Plaintiff as the party opposing summary judgment. *See*

*Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  Any disputes of material fact

are noted.

### A.     Events Leading to Plaintiff's Termination

Plaintiff, a 48 year-old African American woman, worked as a Wage and Hour

Investigator ("WHI") for the Department of Labor in its Hudson Valley, New York office from

2009 through her termination on March 11, 2019. (Docket No. 1 at 2, 3, 14); (A.R. 634-35).  The

Wage and Hour Department ("WHD") is a civil law enforcement agency within the Department

---

[2] Specifically, Defendant submitted the entire administrative record, (Docket No. 160) (the "A.R."), and Plaintiff
submitted a Declaration from counsel as well as 41 exhibits, (Docket Nos. 156-2 through 156-42, 157).

of Labor responsible for enforcing labor standards pursuant to the Fair Labor Standards Act, Medical Leave Act, and the Immigration and Nationality Act. (A.R. 620-21, 702-03).  In her role as a WHI, Plaintiff conducted investigations of companies' employment practices, including: (1) interviewing employees and supervisors; (2) reviewing company records; and (3) determining whether to recommend that the Department commence enforcement proceedings against the investigated company. (*Id.* at 621-22, 647).  Plaintiff, and all WHIs, are required to maintain various records during the course of their work, including: (i) a time report (known as a "WH-40") submitted weekly detailing the number of hours worked on investigative versus administrative tasks; (ii) an activity report (known as "webTA") submitted biweekly for payroll purposes; (iii) a case diary detailing the dates of witness interviews, the manner in which they were taken, what was said, and in what language; and (iv) travel vouchers for their work-related travel expenses. (*Id.* at 280-300, 647, 1000-08, 1050-51).  Plaintiff's direct supervisor during the relevant period, 2017-2019, was Assistant District Director Denise Fernandez. (*Id.* at 360).

The instant dispute arises out of an investigation Plaintiff conducted on Employer A in 2017-2018.[3]  Employer A is a landscaping company that was suspected of violating the Immigration and Nationality Act. (*Id.* at 926-31).  During her investigation, Plaintiff interviewed numerous employees of Employer A, including Employee A on two separate occasions. (*Id.* at 775-80).  Employee A was a foreign national that traveled periodically to the United States from Guatemala on temporary, non-immigrant H-2B visas to perform seasonal landscaping work. (*Id.*).  Following each interview, Plaintiff drafted an interview statement memorializing the conversation, which Employee A signed. (*Id.*).  The first interview was held in-person at

---

[3] The parties agree that the identity of the investigated employer, and its employees, is protected by the informant's privilege. *See generally Roviaro v. United States*, 353 U.S. 53, 59 (1957).  Therefore, the Court will adopt the verbiage used by the parties and the AJ during the proceedings below.

Employee A's worksite on May 10, 2017. (*Id.*).  The second interview was held electronically on September 6, 2017. (*Id.* at 779-80).  The interview statements prepared for each meeting indicated that Employee A spoke English and made statements to Plaintiff in English. (*Id.* at 775-79).

A year later, Employer A's attorney complained to Ms. Fernandez that Plaintiff was conducting her investigation and interviewing witnesses without giving proper notice to counsel beforehand. (*Id.* at 638).  The attorney requested that Ms. Fernandez take over and be counsel's point of contact at the Department for the remainder of the investigation. (*Id.*).  Ms. Fernandez agreed and scheduled a site visit for September 18, 2018. (*Id.*).  During this visit, Ms. Fernandez interviewed Employee A for a third time on behalf of the Department. (*Id.* at 780-82, 1086). However, during this interview, Employee A was only able to converse in Spanish, made statements in Spanish that contradicted his prior statements purportedly made in English to Plaintiff, and told Ms. Fernandez that he did not understand any of what Plaintiff said to him during his prior two interviews because he did not speak English. (*Id.* at 780-92, 938-40).

Ms. Fernandez raised this discrepancy to her immediate supervisor, District Director Jay Rosenblum, to determine how to proceed. (*Id.* at 615).  They decided to initiate an investigation into Plaintiff's interviews of Employee A and held a *Weingarten*[4] meeting with her on October 9, 2018. (*Id.* at 923-24, 955-56).  At that meeting, Plaintiff stated that Employee A spoke "perfect English" when she interviewed him and that "[n]o translator was needed." (*Id.* at 768, 771, 972). Given the conflicting accounts of Employee A's proficiency in English, another supervisor from a different WHD office, Assistant District Director Jorge Alvarez, was assigned to interview

---

[4] A "*Weingarten*" meeting refers to the landmark Supreme Court case *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 267 (1975), in which the Supreme Court established that union employees have the "right of union representation at investigatory interviews which the employee reasonably believes may result in disciplinary action against him."

Employee A as well. (*Id.* at 791-92). Once again, Employee A stated that he did not speak or understand English and that he did not understand the statements Plaintiff attributed to him during his prior interviews with her. (*Id.* at 791, 1138-41).[5] As a result, on November 9, 2018, Ms. Fernandez told Plaintiff to return her physical investigative files to her by the following Wednesday, November 14, 2018. (*Id.* at 641-42). Plaintiff failed to meet this deadline and, on November 14, 2018, was given an extension, via e-mail, to 1:00 p.m. the following Friday, November 16, 2018, to submit the files. (*Id.*). On the same day, Plaintiff was removed from her investigations, placed on phone duty, and told to only work from 8:30 a.m. to 5:00 p.m. (*Id.* at 191-93). She ignored both instructions by working a nine-hour day on November 16, 2018, (*id.* at 193), and by failing to return the files by the 1 p.m. deadline on November 16, 2018, (*id.* at 641), instead returning them at 2:45 p.m. that day, (*id.* at 388).

Plaintiff argues that her failure to deliver the files by November 14 was due to a misunderstanding. (*Id.*). She claims that she brought the physical files with her on November 14 and was prepared to deliver them to Ms. Fernandez that day, but did not realize they needed to be "assembled" since she "had not been advised that the files were going to be taken from [her]." (*Id.*). As for her late delivery of the files on November 16, Plaintiff claims she told Ms. Fernandez on November 14 that she would be out on FMLA[6] leave on November 15, returning late in the afternoon the next day, so Ms. Fernandez should have known Plaintiff would not see her November 14 e-mail, sent at 7:47 p.m., in time to have the files ready by 1:00 p.m. on

---

[5] In response, Plaintiff argues that: (1) contemporaneous texts and phone messages from Employee A confirm that he was fluent in English, (A.R. 387); (2) Employee A changed his story out of fear of retaliation from Employer A, and that documentary evidence proves that the allegations Employee A made during his first interview with Plaintiff (*e.g.*, that Employer A improperly deducts pay and fails to pay for overtime) were true; (3) Ms. Fernandez and Mr. Alvarez did not properly question Employee A to corroborate his English proficiency; and (4) Ms. Fernandez was biased due to her personal dislike of Plaintiff, (Docket No. 156 at 2, 8-12).

[6] "FMLA" refers to the Family and Medical Leave Act of 1993. *See* 29 U.S.C. § 2612.

November 16. (*Id.*) (*see also* Docket No. 156 at 17).  Relatedly, Plaintiff argues that she had no

choice but to work a nine-hour day on November 16, against Ms. Fernandez's instructions, since

she needed to "complete her case diaries and documentation," which she had also been told to

correct. (Docket No. 156 at 16).

      On January 9, 2019, Ms. Fernandez initiated removal proceedings against Plaintiff. (A.R.

434).  The Notice of Proposed Removal cited four charges: (1) providing inaccurate information

regarding Employee A's fluency in English; (2) lacking candor during the October 9, 2019

*Weingarten* meeting with Mr. Rosenblum and Ms. Fernandez by insisting Employee A spoke

"perfect English;" (3) failing to follow Ms. Fernandez's instruction to only work from 8:30 a.m.

to 5:00 p.m. and to return her physical case files by the specified deadlines; and (4) failing to

follow proper procedures by: (i) filing late and inaccurate WH-40s, (ii) filing late travel

vouchers, and (iii) failing to properly document her interviews of employees, including

neglecting to indicate whether she used a translation telephone line (the "language line") to

conduct those interviews. (*Id.* at 702-16).

**B.**    **Removal Proceedings**

      Plaintiff opposed removal and submitted a written response to the Notice of Proposed

Removal, as well as a sworn declaration in opposition on January 30, 2019. (*Id.* at 127-42).  On

March 5, 2019, Maria Rosado, the Northeast Region Administrator for the Department, upheld

the four charges and terminated Plaintiff's employment as of March 11, 2019. (*Id.* at 114-23).

Plaintiff appealed her termination to the MSPB on March 20, 2019. (*Id.* at 1-7).  During a two-

day trial in July 2019, AJ Maria M. Dominguez heard testimony from four witnesses: Ms.

Fernandez, Ms. Rosado, Mr. Rosenblum, and Mr. Alvarez. (*Id.* at 900-1238).  Plaintiff did not

testify but asserted two defenses through a sworn declaration: (1) that her termination was

improperly motivated by race, sex and age discrimination; (2) that her termination was in retaliation for engaging in protected Equal Employment Opportunity Commission ("EEOC") activity; and (3) that her termination was in retaliation for engaging in protected union activity. (*Id.* at 385-91, 581-607).  On October 16, 2019, the AJ found that the Department had established, by a preponderance of the evidence, that Plaintiff engaged in the charged conduct, that there was a nexus between the charged conduct and the efficiency of the service; and that the imposed penalty was reasonable. (Docket No. 156-38); (A.R. 1653-1712).  Specifically, the AJ held that:

1.  As to Charge One: "the appellant provided inaccurate information and, that she did so in an official investigative case file[.] . . . I further find that all of the entries she made, as laid out in the specifications, were inaccurate.  Because I find Ms. Fernandez, Mr. Alvarez and Ms. Rosado to be more credible than the appellant, I find that the appellant's mere claim that Employee A could speak 'perfect English' and, that he had a motive to change his account, lacks merit.  The appellant's declarations she provided in support of her appeal are not enough to refute the agency's credible claims to the contrary." (A.R. 1670).

2.  As to Charge Two: "the information the appellant provided [about Employee A's fluency in English] was incorrect and, that when she provided it to Ms. Fernandez and Mr. Rosenblum, she knew she was being less than candid.  Ms. Fernandez's and Mr. Rosenblum's *Weingarten* meeting notes reveal the appellant insisted that Employee A spoke 'perfect' English and, that it was unnecessary to interview him in Spanish. However, following additional interviews conducted by Ms. Fernandez and Mr. Alvarez (both of whom are fluent Spanish speakers), both came away with the impression, believing that [Employee A] only speaks Spanish." (*Id.* at 1674) (internal quotations omitted).

3.  As to Charge Three: "the record contains a number of e-mails showing that Ms. Fernandez gave the appellant proper instructions and, that the appellant failed to follow them." (*Id.* at 1675).

4.  As to Charge Four: "there is no dispute the agency had procedures in place related to submitting WH-40's and webTA time and attendance records and, that the appellant was made aware of them[] . . . [but] failed to follow them. . . . [T]here is no dispute the agency had proper procedures in place pertaining to the submission of travel vouchers and, that the appellant was made aware of them[] . . . [but] nonetheless failed to follow them[.] . . . I find that the agency had proper procedures in place pertaining to the documentation of witness interviews and work performed and, that the appellant was made aware of them[] . . . [but] nonetheless failed to follow them. .

> . . I find that the agency has established that proper procedures were in place
> pertaining to taking an employee's interview statement and, that the appellant was
> aware of them[] . . . [but] she failed to follow them. . . . I also find that despite Ms.
> Fernandez's clarification on May 10, 2018 as to when corrections to a WH-40 could
> be made, there were 8 additional instances after May 10, 2018 during which the
> appellant failed to follow this procedure."

(*Id.* at 1681-90) (citations and internal quotations omitted).  Further, the AJ held that the agency

met its burden of establishing a nexus between Plaintiff's conduct and the "efficiency of the

service since each of the charges strike directly at the heart of the agency's important mission of

enforcing federal labor laws relating to wage and hours, which requires an investigator's account

of what she found during her investigation to be truthful." (*Id.* at 1691).  The AJ also rejected

Plaintiff's affirmative defenses, holding that: (1) she "failed to provide any evidence that" her

identified comparators "were actually similarly-situated to her;" (2) that even if they were

similarly-situated, "Ms. Fernandez testified that nobody had engaged in similar misconduct"

since the proposed comparators' violations were isolated; and (3) Plaintiff's claim of retaliation

was meritless since: (i) Ms. Fernandez testified that by the time she received Plaintiff's EEOC

complaint, "she had already begun considering disciplinary action for the appellant," and (ii) her

assertion that she was discriminated against based on union activity was based purely on her own

self-serving statements. (*Id.* at 1694-95).  Based on these findings, the AJ held that her removal

was a "reasonable penalty" under the *Douglas* factors[7] and affirmed her termination. (*Id.* at

1697-1703).

---

[7] "*Douglas* factors" refers to twelve factors established in *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305 (1981), to determine the appropriateness of an employment penalty.  The factors include: "(1) [t]he nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any

C.      **Procedural History**

Plaintiff filed this action on December 18, 2019. (Docket No. 1).  Defendant answered

the Complaint on April 3, 2020, (Docket No. 23), and discovery closed on March 9, 2023,

(Docket No. 110).  On October 31, 2023, Defendant filed a motion for partial summary judgment

on Plaintiff's non-discrimination, civil service claim, which seeks to reverse the MSPB decision.

(Docket Nos. 154, 156).  Plaintiff opposed the Motion on January 4, 2024, (Docket No. 156),

and Defendant replied on January 20, 2024, (Docket No. 163).

II.     **LEGAL STANDARDS**

A.      **Summary Judgment**

"When a party seeks judicial review of agency action, summary judgment is appropriate,

since whether an agency action is supported by the administrative record and consistent with

APA standard of review is decided as a matter of law." *Compunnel Software Grp., Inc. v. Gupta*,

No. 14-CV-4790 (RA), 2018 WL 4757941, at *6 (S.D.N.Y. Sept. 30, 2018) (citations and

internal quotations omitted).  "In deciding a motion for summary judgment under Rule 56, courts

'grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.'" *Flores Zabaleta v. Nielsen*, 367

F. Supp. 3d 208, 210 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986).  However, where "a party seeks review of agency action

under the APA, the district judge sits as an appellate tribunal, and the entire case on review is a

question of law," so the "usual summary judgment standard . . . does not apply" and the Court

---

applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency;
(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or
had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating
circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment,
harassment, or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy
and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others." *Id.* at 305-
06.

decides only "whether the agency acted arbitrarily, capriciously or in some other ways that violates 5 U.S.C. § 706." *Ass'n of Proprietary Colleges v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) (citations and internal quotations omitted).

**B.    Appeal of MSPB Decision**

Pursuant to 5 U.S.C. § 7701, "qualified federal employees may appeal certain adverse employment decisions to the MSPB." *Babin v. Dep't of the Treasury*, No. 20-cv-2702 (JMA)(SIL), 2021 WL 5860595, at *8 (E.D.N.Y. Dec. 9, 2021), *report and recommendation adopted*, 2022 WL 79814 (E.D.N.Y. Jan. 7, 2022).  Petitions to review a MSPB decision "are ordinarily filed in the Court of Appeals for the Federal Circuit." *Murray v. U.S. Dep't of Just.*, 821 F. Supp. 94, 101 (E.D.N.Y.), *aff'd*, 14 F.3d 591 (2d Cir. 1993).  However, in mixed cases, *i.e.*, cases where an employee asserts both discrimination and non-discrimination claims, "judicial review of the final Board order lies in the district court." *Marro*, 2008 WL 699506, at *5 (citing 5 U.S.C. § 7703(b)(2)).

The standard of review for a plaintiff's non-discrimination, civil service claim is narrow and must be "based exclusively on the administrative record." *Shaw v. Dep't of Veterans Affs.*, No. 14-cv-5856 (NSR), 2017 WL 5508914, at *2 (S.D.N.Y. Mar. 16, 2017) (citation and internal quotation omitted), *aff'd sub nom. Shaw v. McDonald*, 715 F. App'x 60 (2d Cir. 2018).  "The Court must affirm the decision of the Board unless the decision is found to be '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence.'" *Figueroa v. Nielsen*, 423 F. Supp. 3d 21, 28 (S.D.N.Y. 2019) (quoting 5 U.S.C. § 7703(c)).

The Supreme Court has held that "the arbitrary and capricious standard is extremely narrow and allows the Board wide latitude in fulfilling its obligation to review agency disciplinary actions." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 7 (2001).  Thus, "[i]t is not for the [reviewing court] to substitute its own judgment for that of the Board[]" and "[t]he role of judicial review is only to ascertain if the Board has met the minimum standards set forth in the statute." *Id.*  The "substantial evidence" standard is considered more deferential than the "clearly erroneous standard." *Figueroa*, 423 F. Supp. 3d at 28 (citing *Stern v. Marshall*, 564 U.S. 462, 515 (2011)).  In the context of MSPB review, "substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kasten v. Merit Sys. Prot. Bd.*, 687 F. App'x 42, 43 (2d Cir. 2017) (internal quotation omitted).  "As such, this Court discharges its duty by determining whether the contested decision complies with the applicable statute and regulations and whether it has a rational basis supported by substantial evidence from the record taken as a whole." *Shaw*, 2017 WL 5508914, at *2.  "'To reverse [the agency's] finding, the Court] must find that the evidence not only supports [the] conclusion [that the agency was incorrect], but compels it.'" *Figueroa*, 423 F. Supp. 3d at 28 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)).

## III.  DISCUSSION

For an agency to prevail on an appeal of a MSPB decision in an adverse employment action, three elements must be met: "[f]irst, it must prove by preponderant evidence that the charged conduct occurred.  Second, it must establish a nexus between that conduct and the efficiency of service.  Third, it must demonstrate that the penalty imposed was reasonable." *Davis v. U.S. Postal Serv.*, 257 F. App'x 320, 322 (Fed. Cir. 2007) (citing 5 U.S.C. §§ 7701(c)(1)(B); 7513(a)).  "Further, with respect to proving the charges themselves, an agency is

required to prove only the essence of its charge, and need not prove each factual specification in support of its charge." *Marro*, 2008 WL 699506, at *14 (citations and internal quotations omitted).

## A.     Proof of Charged Conduct

Defendant urges the Court to affirm the AJ's decision upholding Plaintiff's termination since it "was supported by substantial evidence in the administrative record, and a review of the record further demonstrates that no error—much less a material or harmful error—was committed." (Docket No. 163 at 5).  In response, Plaintiff argues that the AJ's decision should be reversed "because a reasonable factfinder could find that it is not supported by substantial evidence" since the AJ "ignored important evidence." (Docket No. 156 at 5).  "The standard of review, however, is not whether the Government met its burden of proof, but whether the AJ's conclusion that the Government met that burden was based on substantial evidence." *Figueroa*, 423 F. Supp. 3d at 29.

## 1.     Charge One: Providing Inaccurate Information

Defendant contends that the AJ properly sustained the first charge that Plaintiff erroneously drafted witness statements indicating Employee A was fluent in English. (Docket No. 155 at 18-22).  In support of this argument, Defendant cites testimony from Ms. Fernandez and Mr. Alvarez (both native Spanish speakers) that Employee A only understood Spanish and disclaimed the statements Plaintiff attributed to him.[8] (*Id.*).  Plaintiff makes five arguments in response, that: (1) "documentary evidence corroborates the allegations Employee A made to

---

[8] The charge of providing inaccurate information "has no specific elements of proof," so "an agency may simply describe actions that constitute misbehavior in narrative form" and show that "efficiency of the service suffers because of the misconduct." *Canada v. Dep't of Homeland Security*, 113 M.S.P.R. 509, 513-14 (2010). (*See also* A.R. 1660).  Proof of intent is not required to sustain the charge. *See Boo v. Dep't of Homeland Security*, 122 M.S.P.R. 100, 106-07 (2014).

McFall;" (2) contemporaneous text and voice messages "that the Agency suppressed" confirm Employee A spoke English; (3) the AJ overlooked evidence that Employee A changed his statement and "possibly even how he presented his linguistic competence" out of fear of retribution from Employer A; (4) any false information in Plaintiff's interview statements "originated with Employee A;" (5) "the ALJ failed to consider that Fernandez and Alvarez declined the opportunity to corroborate McFall's account of her interviews with Employee A;" and (6) the AJ ignored evidence that Ms. Fernandez was biased against Plaintiff.[9] (Docket No. 156 at 8-15).

First, Plaintiff may not rely on extrinsic evidence that is not part of the administrative record to rebut the AJ's finding that the charges against her were supported by substantial evidence.  Review of the AJ's decision is limited to the administrative record and the Court "may not consider [] newly submitted evidence . . . [that] was not part of the record before the AJ." *Thomas v. Dep't of Lab.*, 685 F. App'x 903, 907 (Fed. Cir. 2017); *see also Lazaro v. Dep't of Veterans Affs.*, 565 F. App'x 900, 904 n.2 (Fed. Cir. 2014) ("[d]ocuments that were not submitted to the Board during the remand, but instead submitted directly to this court on appeal, are [] irrelevant.")  Here, Plaintiff asserts that the AJ ignored evidence corroborating the veracity of Employee A's interview statements, namely, that: (1) "Employer A's payroll records . . . corroborate Employee A's statement that Employer A paid him with two checks;" and (2) a "mail interview statement from another employee . . . corroborates Employee A's allegation that

---

[9] Plaintiff also argues that the AJ incorrectly drew a negative inference from her refusal to testify during the administrative proceedings. (Docket No. 156 at 6).  However, this is incorrect.  The AJ merely noted that because Plaintiff failed to testify and, therefore, was not cross-examined, the only statements the MSPB could weigh against the testimony of the Department's witnesses was her self-serving declarations. (A.R. 1654 n.3, 1665, 1694).  In such circumstances, the "hearsay evidence . . . may not be sufficiently probative" to rebut "contradictory live testimony." *Anderson v. Dep't of Transp., F.A.A.*, 827 F.2d 1564, 1576 (Fed. Cir. 1987) (citation and internal quotation omitted). In any event, even if the AJ had drawn an adverse inference, doing so would not have been improper as "an adverse inference may be drawn from a petitioners' conscious decision to remain silent at both the agency and board level rather than to affirmatively assert" her innocence. *Id.*

Employer A" improperly "required employees to pay for their own travel to the United States."
(Docket No. 156 at 10-11).  However, these documents were heavily redacted when submitted in
the administrative proceedings and, thus, the AJ had no way to determine whether they supported
Plaintiff's contentions when the MSPB issued its decision. (*Id.* at 10 n.5).

While Plaintiff claims that these "undue redactions" by the Department were part of a
"pattern of gamesmanship" to shield "probative evidence that was harmful to its case," (*id.*), the
proper remedy would have been to move before the MSPB to compel the Department to remove
the redactions. *See* 5 C.F.R. § 1201.73(c)(1) ("If a party fails or refuses to respond in full to a
discovery request, the requesting party may file a motion to compel discovery.").  She did not do
so. (Docket No. 163 at 8).  As a result, Plaintiff has waived any argument that she was denied
access to, and the AJ failed to consider, evidence proving that her interview statements were
accurate. *See Graves v. Dep't of the Navy*, 534 F. App'x 942, 946 (Fed. Cir. 2013) ("turning to
[plaintiff's] assertions that the AJ denied him additional discovery . . . [plaintiff] failed to file a
motion to compel during the compliance proceedings at issue in this appeal; thus there is nothing
to review"); *Porzillo v. Dep't of Health & Hum. Servs.*, 369 F. App'x 123, 128 (Fed. Cir. 2010)
(holding that plaintiff waived the argument that the MSPB "failed to take into account new
evidence that was not readily available" to her during an administrative proceeding where she
"failed to raise that discovery issue in her submissions to the administrative judge.").

Second, Plaintiff's argument that contemporaneous messages she exchanged with
Employee A in English prove the veracity of her interview statements has also been waived.
Plaintiff asserts that "Employee A sent text messages and left voice messages [with her] in
English on her work phone," that she "advised the Agency of this corroborating evidence," but
"only the Agency had access to" them and they "declined to produce them." (Docket No. 156 at

11).  The problem with this argument is twofold: (1) Defendant claims that the Department did not have access to these records during the administrative proceedings; and (2) Plaintiff did not subpoena the mobile carrier or otherwise move to compel their production. (Docket No. 163 at 8).  Because Plaintiff knew of the existence of these messages, and their alleged corroborative content, (A.R. 386-87), it was incumbent upon her to seek their production, either via motion to compel or third-party subpoena. *See* 5 C.F.R. §§ 1201.73(c)(1), 1201.81(a).  Plaintiff's failure to do so cannot now be used to assert that the AJ's decision upholding Charge One was mistaken, since the AJ did not have access to the messages either. *See, e.g.*, *Alguard v. Vilsack*, No. 13-CV-3083-TOR, 2015 WL 5008416, at \*7 (E.D. Wash. Aug. 20, 2015) ("contrary to Plaintiff's assertion, the AJ was not required-without a motion to compel or a directive on remand-to order the Agency to disclose its files"), *aff'd sub nom. Alguard v. United States Dep't of Agric.*, 755 F. App'x 699 (9th Cir. 2019).

Third, Plaintiff's argument that the AJ failed to consider the possibility that Employee A changed his story out of fear of retribution from Employer A is without merit.  Plaintiff argues that there is substantial evidence that Employee A was being truthful with her and only changed his story, and feigned ignorance of the English language, out of fear. (Docket No. 156 at 12). Specifically, Plaintiff points to: (1) Employee A's statement to her that other employees would not cooperate because "they were afraid they would no longer be able to travel to the United States to work;" (2) Employee A's statement to Ms. Fernandez that he just "nodded [his] head yes" and signed the interview statement because he thought Plaintiff was an immigration agent; and (3) Employer A's attorney's "aggressive" attempts to curtail the Department's investigation during the time between Plaintiff's initial interviews and Ms. Fernandez's and Mr. Alvarado's interviews, as evidence that the AJ's conclusion that she provided inaccurate information was not

supported by substantial evidence. (*Id.*).  The AJ expressly considered, and rejected, this

argument holding that, "although I have considered the appellant's claim that Employee A

actually did speak 'perfect English' when she interviewed him but, that he later changed his story

out of fear of retaliation from his employer, there is simply no corroboration of this.  In fact,

there is contradictory evidence of it." (A.R. 1665-66).  The AJ then goes on to describe the

contradictory evidence, including:

1. Testimony from Ms. Fernandez and Mr. Alvarez that neither "believed Employee A
   changed his version of events after [Plaintiff's] interviews."

2. Testimony from Ms. Fernandez that "neither Employee A, nor the remaining 5 or 6
   employees she interviewed in September 2018, had said anything which would lead her
   to believe they were fearful."

3. Testimony from Ms. Fernandez that "in her 23 years of experience, employees who
   change their accounts go from a 'no violation statement' (indicating an employer was in
   compliance with the law) to a 'violation statement' (indicating they were not in
   compliance)" and not the other way around, as in this case.

4. Employee A's statement to Ms. Fernandez "that Employer A required him to pay the visa
   fees of his employment," which is itself a violation.

5. Testimony from Ms. Fernandez and Mr. Alvarado that "Employee A's willingness to
   convey this information [regarding the visa fee violation] is contrary to what would be
   expected of a worker who is in fear of retaliation."

(*Id.* at 1665-70).  Plaintiff's disagreement with the weight and credibility the AJ gave this

testimony is not a proper basis to disturb the MSPB's ruling. *See Davis*, 257 F. App'x at 323

("the Board's determinations regarding witness credibility are virtually unreviewable since the

determination of the credibility of the witnesses is within the discretion of the presiding official

who heard their testimony and saw their demeanor") (citations and internal quotations omitted);

*White v. U.S. Postal Serv.*, 382 F. App'x 928, 933 (Fed. Cir. 2010) (holding that where the

MSPB's "decision rests in substantial part on credibility determinations" the reviewing court

"cannot re-evaluate" those determinations unless they are "inherently improbable or discredited

by undisputed fact."). Here, the AJ properly considered the factors established in *Hillen v. Dep't of the Army*, 35 M.S.P.R. 453, 458-62 (1987),[10] in evaluating Ms. Fernandez's and Mr. Alvarado's credibility, and Plaintiff has not pointed to, nor could the Court identify: (i) any "undisputed fact" in the administrative record that discredits it; or (ii) any reason why it is "inherently improbable" that Employee A would be truthful with them. Therefore, the AJ's rejection of Plaintiff's argument that Employee A changed his story out of fear was not an abuse of discretion.

Fourth, there is substantial evidence that Employee A did not say what Plaintiff attributed to him in the interview statements. Plaintiff argues that the AJ did not consider the possibility that Employee A lied to her out of fear that she was an immigration agent, so "to the extent that anything contained in the Form WH-31s McFall prepared is false, it is no fault of McFall's" because she "dutifully record[d] what Employee A told her at the time." (Docket No. 156 at 13). However, the AJ considered this possibility and found that it was unlikely since Plaintiff's interview statements for Employee A contained numerous terms of art that were not in common parlance. (A.R. 1666). For example, the interview statements indicate that Employee A used words like, "reimburse[]," "deduction," "H2B workers," "inbound/outbound transportation," and "subsistence pay," while also referring to the make, model and weight of the car he drove on the job. (*Id.* 775-79). Ms. Rosado testified that these were "words that workers would not normally" use, that in her experience employees typically would not refer to coworkers as "H2B workers," and that "subsistence" is "a regulatory word" and is "not [a word] that would be used in a

---

[10] These factors include: "(1) [t]he witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor." *Hillen*, 35 M.S.P.R. at 458.

common conversation between" employees who do not speak English as their first language. (*Id.* at 1170).  Ms. Fernandez agreed, stating that "in my 23 years, most workers that don't speak English as their first language won't understand what reimbursement is," nor will they know the make, model and weight of the vehicle they are driving. (*Id.* at 1306); (*see also id.* at 1307) ("'[d]eduction' is another word they don't really know.  They just know they took out -- they took out my money; it was taken out, out of my pay, not 'deduction'); (*id.* at 1308) ("[t]hey won't know what 'inbound' and 'outbound' is.  That is an H-2B concept").  Based on this testimony, the AJ rejected Plaintiff's argument that any inaccuracies in her interview statements originated with Employee A. (*Id.* at 1666-67).  In the absence of "evidence so weighty that it 'compels' the Court to disturb the AJ's finding," the Court must sustain the charge. *Figueroa*, 423 F. Supp. 3d at 31 (quoting *Elias-Zacarias*, 502 U.S. at 481 n.1).

Fifth, Plaintiff's argument that the AJ's ruling did not consider that Ms. Fernandez and Mr. Alvarez never attempted to corroborate Plaintiff's interview statements is not supported by the administrative record.  In rejecting Plaintiff's claim that Employee A spoke English, the AJ noted that (1) both Ms. Fernandez and Mr. Alvarez spoke Spanish fluently; (2) both testified that Employee A was unable to say more than a few words in English and had a heavy accent; and (3) both reviewed Plaintiff's prior interview statements with Employee A, who denied making those statements and said he "just nodded [his] head yes" to Plaintiff during prior interviews because he did not understand what she was saying. (A.R. 1667).  Plaintiff argues that the AJ should have also noted that Employee A "worked in the United States for seven or eight months of the year for 10 years" and as such "would have some proficiency in English." (Docket No. 156 at 13).  However, even if this is true—and Plaintiff offers no evidence to support it other than her own self-serving declaration—"some proficiency in English" would not explain the

statutory and legal language Plaintiff attributed to Employee A in her interview statements, nor would it support Plaintiff's assertion that he "spoke perfect English." (A.R. 1665-70). Moreover, while "ask[ing] other employees or Employer A about Employee A's English proficiency," (Docket No. 156 at 13), may have shed additional light on Employee A's English fluency, it was not a necessary prerequisite for the AJ to find that Plaintiff's interview statements were inaccurate given the other evidence in the administrative record.

Sixth, in upholding the first charge, the AJ properly weighed Ms. Fernandez's credibility and potential bias against the entire administrative record. As an initial matter, the e-mail messages Plaintiff references, while unprofessional, are not so outrageous so as to discredit all of Ms. Fernandez's testimony, much of which was corroborated by other witnesses. The first e-mail was sent by Ms. Fernandez to Mr. Rosenblum on May 18, 2018, and states "I'm so done with her . . ." in response to Mr. Rosenblum forwarding an e-mail referencing a "step 2 grievance" Plaintiff filed. (A.R. 608-09). The second e-mail was sent by Ms. Fernandez to Mr. Rosenblum on September 18, 2018, and notifies him that she just interviewed Employee A and learned that he "doesn't speak a word of English" and did not recognize Plaintiff's interview statement (despite signing it). (*Id.* at 615). Ms. Fernandez explained that she was "dumbfounded" as to why Plaintiff would draft an interview statement in English for someone that does not speak the language. (*Id.*). In the last paragraph of the e-mail, Ms. Fernandez states that she was "trying to be unbiased here and give [Plaintiff] the benefit of the doubt." (*Id.*). The final e-mail Plaintiff references was sent by Ms. Fernandez to Mr. Rosenblum on January 11, 2019—three days after the Department initiated disciplinary proceedings against Plaintiff—in which she expresses frustration that Plaintiff was requesting "2.5 hours" of sick leave that morning after Ms. Fernandez had already denied a prior request for 8 hours leave that day,

granting 6 hours instead. (*Id.* at 613).  The e-mail attaches an image that states, "if I was a jedi, there's a 100% chance I would use the force inappropriately." (*Id.* at 614).[11]  While these e-mails indicate that Ms. Fernandez was frustrated with Plaintiff, as well as her job performance generally, they do not indicate that she was out to "get McFall." (Docket No. 156 at 13).

Moreover, Ms. Fernandez explained the meaning behind each of these e-mails when cross-examined during the administrative proceedings, so the AJ did not "ignore evidence" as Plaintiff contends. (*See, e.g.*, A.R. 1092-94) (explaining that "I'm so done" means "this is not my issue" since "at step 2 [Ms. Fernandez is] no longer involved in that process"); (*id.* at 1095-97) (explaining that she was frustrated in the January 11, 2019 e-mail because Plaintiff asked for 8 hours of "union time," which Ms. Fernandez modified to 6 hours, but instead of accepting that Plaintiff then "requested FMLA sick leave for the remainder of the two hours" that she had already denied).  While Plaintiff disagrees with the AJ's decision to credit Ms. Fernandez's testimony after weighing the *Hillen* factors, those factors need not be applied formalistically, and the Court is "not in a position to reevaluate credibility determinations that are not inherently improbable or discredited by undisputed facts." *Joseph v. Dep't of Homeland Sec.*, 497 F. App'x 26, 28 (Fed. Cir. 2012).  To the extent, Plaintiff is arguing that the AJ's opinion must be reversed because it did not expressly reference the e-mail messages, that argument is contrary to established precedent that "[a]n Administrative Judge need not explicitly address all of a petitioner's allegations or evidence in her opinion: Omission does not indicate a lack of consideration." *McKeown v. Merit Sys. Prot. Bd.*, 809 F. App'x 953, 956 (Fed. Cir. 2020).

---

[11] Plaintiff also references an e-mail Ms. Fernandez sent to Mr. Rosenblum on November 1, 2018, in which she says "this is good" in response to him pointing out dates Plaintiff failed to note her use of the language line during interviews. (Docket No. 156 at 14).  However, the Court has not been able to identify the e-mail in the administrative record and, therefore, it may not be considered in reviewing the AJ's decision.  Nonetheless, even if it was in the record, it does not indicate bias as Ms. Fernandez was merely expressing satisfaction that her suspicion, in the wake of learning Employee A's interview statements were inaccurate, that Plaintiff's other interview statements may also be inaccurate, was correct. See *Thomas*, 685 F. App'x at 907.

Accordingly, the Court finds that the AJ's decision affirming Charge One, that Plaintiff provided inaccurate information, was supported by substantial evidence, was not an abuse of discretion, and was not arbitrary, capricious or contrary to law.

**2.    Charge Two: Lack of Candor**

To prove lack of candor, the Department was required to establish that Plaintiff knowingly made a misrepresentation or omission, and that there was deception involved. (A.R. 1671) (citing *O'Lague v. Dep't of Veterans Affs.*, 123 M.S.P.R. 340, 348 (May 11, 2016), *aff'd*, 698 F. App'x 1034 (Fed. Cir. 2017)).  Defendant argues that the AJ correctly held that Plaintiff lacked candor when she told Ms. Fernandez and Mr. Rosenblum during the October 9, 2018 *Weingarten* meeting that Employee A spoke "perfect English." (Docket No. 155 at 22).  Plaintiff responds that: (1) "[p]erfect is hyperbole" that was not meant to be "read[] literally;" (2) "the Agency has not refuted . . . that Employee A spoke and understood English, and that he reported Employer A's violations to McFall;" and (3) [e]ven if both turned out to be false . . . McFall disclosed her impressions of the interview and did not knowingly disclose something she knew or believed to be false." (Docket No. 156 at 14-15).

Plaintiff's arguments are unavailing.  As a threshold matter, Plaintiff did not present her hyperbole argument to the MSPB, so it has been waived. *See Lepore v. Off. of Pers. Mgmt.*, 759 F. App'x 912, 917 (Fed. Cir. 2019) (holding that an argument that "was never raised before the MSPB in the proceedings below . . . is therefore waived.")  Moreover, regardless of what Plaintiff meant by "perfect," the administrative record indicates that Employee A had very little, if any, proficiency in English.  For example, both Ms. Fernandez and Mr. Alvarez testified that Employee A was unable to converse in English and did not understand the statements attributed to him by Plaintiff. (*See, e.g.*, A.R. 1139-41) (Mr. Alvarez testified that when he spoke to

Employee A in English he "did not" respond and had a "blank stare" on his face until eventually

responding in a heavy accent that he spoke Spanish); (*id.* at 1293) (Ms. Fernandez testified that

"the first thing that came out of [Employee A's] mouth" when she interviewed him was

"Espanol.").  Furthermore, the MSPB did not uphold the charge because Employee A could not

speak "perfect English," it did so because Plaintiff insisted that her interview statements were

accurate during her *Weingarten* meeting even when confronted with evidence to the contrary.

(*Id.* at 1673-74) ("I further find that the interviews of Employee A . . . revealed Employee A's

inability to carry on a fluent conversation in English and, that the [Plaintiff's] claims to the

contrary constituted a misrepresentation of the facts.").  As to Plaintiff's contention that

Employee A must have understood English because documentary evidence proves the

allegations described in her interview statements were accurate, this argument is beyond the

scope of the Motion.  The evidence Plaintiff relies on to support this argument was not in the

administrative record nor presented to the AJ, therefore, the Court cannot consider it here. *See*

*Thomas*, 685 F. App'x at 907; *Lazaro*, 565 F. App'x at 904.

      Finally, in holding that Plaintiff knowingly lacked candor, the AJ noted that Plaintiff was

unequivocal during her *Weingarten* meeting that Employee A spoke English. (A.R. 1673) ("the

appellant repeatedly attributed certain statements to Employee A and, when questioned about

them, she insisted his English was 'perfect.'").  Plaintiff did not hedge, nor intimate that she was

unsure or was relying purely on her own impression. (*Id.*) ("There is no dispute that during the

October 9, 2018 *Weingarten* meeting, the appellant was asked several questions" about

Employee A's ability to speak English and responded affirmatively to each.).  Therefore,

Plaintiff's argument that she lacked the requisite intent to sustain Charge Two is without merit.

Accordingly, the Court finds that the AJ's decision affirming Charge Two, that Plaintiff lacked candor during the October 9, 2018 *Weingarten* meeting, was supported by substantial evidence, was not an abuse of discretion, and was not arbitrary, capricious or contrary to law.

**3.      Charge Three: Failure to Follow Management Instructions**

The third charge relates to Plaintiff's alleged failure to follow Ms. Fernandez's instructions to turn over her case files and only work from 8:30 a.m. to 5:00 p.m. Monday through Friday. (A.R. 1675).[12]  To prove this charge, the Department was required to show, "that proper instructions were given to an employee and that the employee failed to follow them, without regard to whether the failure was intentional or unintentional." *Hamilton v. U.S. Postal Serv.*, 71 M.S.P.R. 547, 556 (1996).  The charge "does not turn on proof of intent," but the Department was free to consider whether Plaintiff acted intentionally or negligently "as an aggravating factor in the penalty selection." *Id.* at 555-57.

Defendant argues that the AJ's finding, that the Department proved Charge Three by a preponderance of the evidence, is supported by substantial, unrebutted evidence and that if Plaintiff thought Ms. Fernandez's instructions were unfair or improper the appropriate remedy would have been to file a grievance, not disobey them. (Docket No. 163 at 11-13).  In response, Plaintiff contends that: (1) Ms. Fernandez had no "legitimate reason" to give the instructions since they were based on the "erroneous . . . notion that [Plaintiff] mishandled the interviews of Employee A;" (2) she did follow Ms. Fernandez's instruction to turn over her case files by November 14, 2018, but the files were just in a different form than requested since the

---

[12] Specifically, on November 9, 2018, Ms. Fernandez instructed Plaintiff "to come in to the office this Wednesday and please bring all your case files." (A.R. 874).  When Plaintiff failed to do so, Ms. Fernandez instructed her on November 14, 2018 to "make sure you have them on my desk no later than 1pm on Friday November 16th, 2018," (*id.*), and to only work eight-hour days going forward, (*id.* at 876).  Plaintiff did not return the case files by the new deadline, (*id.* at 388, 641), and worked over eight-hours on November 16, 2018, (*id.* at 878).

instructions were "ambiguous;" (3) the only reason she returned the case files two hours late on

November 16, 2018 is because she was out on FMLA leave and did not receive Ms. Fernandez's

follow-up instruction; and (4) she had no choice but to work over eight hours on November 16,

2018 in order to meet other directives from Ms. Fernandez. (Docket No. 156 at 15-18).

First, the AJ correctly held that Plaintiff was required to follow Ms. Fernandez's

instructions regardless of whether she thought they were fair or justified. "[A]bsent a dangerous

situation or irreparable harm, where there is substantial reason to believe that an order is

improper, an employee first must obey the order and then challenge its validity." *Figueroa*, 423

F. Supp. 3d at 33.  Therefore, Plaintiff's argument that she was not required to follow the

instructions because they were based on a faulty premise and/or unfair fails as a matter of law.

Second, Ms. Fernandez's November 14, 2018 e-mail instruction was not ambiguous.  It

plainly stated that Plaintiff was required to turn over her case files by 1:00 p.m. that Friday.

(A.R. 874). To the extent Plaintiff was confused, it was her responsibility to ask for clarification.

*See, e.g.*, *Dysthe v. Dep't of Transp., F.A.A.*, 795 F.2d 71, 72 (Fed. Cir. 1986) ("employees who

are subjected to what they consider confusing instructions would normally seek to clarify their

status and to clear up the assumed ambiguity—and would not be automatically relieved from

their existing obligations as employees.").  Nor is there anything in the administrative record

corroborating Plaintiff's claim in her declaration that she delivered her case files to Ms.

Fernandez on November 14, 2018, just in a different form than requested. (*Id.* 388).  In fact, Ms.

Fernandez testified that the opposite was true—Plaintiff did not have any of her case files with

her when they met on November 14, and stated that she "didn't know [she] had to bring the case

files" to the meeting. (*Id.* at 1340).  When pressed further by Ms. Fernandez, Plaintiff claimed

that she "had them, [but they] were not assembled" and she would need until Friday, November

16 to assemble them. (*Id.* at 1341).  However, Plaintiff did not give Ms. Fernandez the

"unassembled case files" she claimed to have had with her that day. (*Id.*).  Since the Court cannot

second-guess the MSPB's credibility determinations, and Plaintiff relies solely on her own self-

serving declaration, the AJ's decision must be upheld.

Third, Plaintiff admitted that she failed to deliver her case files by Ms. Fernandez's

second deadline of 1:00 p.m. on November 16, 2018. (*Id.* at 388).  While Plaintiff argues that she

was unaware of the deadline because she was out of the office on FMLA leave when Ms.

Fernandez sent the November 14 e-mail setting the new deadline, (*id.*), this does not explain

why: (1) she did not request an extension upon returning to work and seeing the e-mail; and (2)

the files she delivered almost two-hours late were incomplete. (*Id.* at 1345-46).  Moreover, Ms.

Fernandez testified that her November 14 e-mail was not the first time she told Plaintiff to have

the case files ready on November 16, as she also mentioned it to Plaintiff during their November

14 in-person meeting. (*Id.* at 1341).  Thus, even if Plaintiff had not seen Ms. Fernandez's initial

7:47 p.m. e-mail while on leave, it should not have been a surprise to her upon returning to work

that the files needed to be submitted that day.  In any event, Ms. Fernandez testified that the files

Plaintiff did submit, at 2:45 p.m. on November 16, were incomplete. (*Id.* at 1345-46).  Thus, the

AJ's finding that Plaintiff failed to meet Ms. Fernandez's second deadline to deliver her case

files was also correct.

Fourth, the AJ properly held that Plaintiff failed to follow Ms. Fernandez's November 14

instruction not to work over eight hours a day.  Plaintiff does not dispute that she did not follow

this instruction, (*id.* at 388, 879), but argues that she had no other choice because she was also

instructed to complete her "case diaries" and "travel vouchers," (Docket No. 156 at 17).

However, being given conflicting or onerous instructions is not a proper basis not to follow

them. *See Anderson v. Dep't of Transp.*, F.A.A., 735 F.2d 537, 540 (Fed. Cir. 1984) ("confusion

as to [instructions from management] cannot excuse anyone's failure to" follow them.).

Accordingly, the Court finds that the AJ's decision affirming Charge Three, that Plaintiff

failed to follow management's instructions, was supported by substantial evidence, was not an

abuse of discretion, and was not arbitrary, capricious or contrary to law.

**4.      Charge Four: Failure to Follow Proper Procedures**

The fourth charge alleges that Plaintiff violated the Department's procedures for time

reporting, submitting travel vouchers, and documenting witness interviews. (A.R. 14-17).  To

prove this charge, the Department was required to establish that the employee was aware of the

agency's procedures but did not follow them. *See Wilkinson v. Dep't of Air Force*, 68 M.S.P.R.

4, 7 (1995).  The MSPB held that the Department satisfied each of these elements and the Court

finds that this ruling was supported by substantial evidence.

**i.      Time Reporting**

Defendant contends that the Department had established procedures for submitting WH-

40s and Plaintiff was aware of these procedures, but failed to follow them. (Docket No. 155 at

24).  Plaintiff argues in response that she submitted her WH-40s on time, but believed that

Department policy allowed her to correct initially inaccurate submissions "within 365 days"

because the applicable rules "d[id] not say anything about corrections." (Docket No. 156 at 18).

According to Department policy, "WHIs are required to enter all hours worked in the

appropriate modules." (A.R. 861).  "The time report should normally be submitted by the end of

the day on Friday or no later than Monday morning." (*Id.* at 865).  The reports must match the

hours the employee reports on the WebTA system. (*Id.* at 1012).  Numerous e-mail records

confirm that Plaintiff was aware of these rules.  For instance, on May 18, 2017, Ms. Fernandez e-

mailed Plaintiff that there were "discrepancies in your submitted [WH-]40[s] and your web ta"
and that she should "keep in mind that wh-40[s] are required to be submitted on a timely basis
and be accurate." (*Id.* at 794). Ms. Fernandez e-mailed Plaintiff about this again on November
28, 2017, telling her that the hours reported in her WH-40 did not match her WebTA records,
that the "wh-40s are required to be submitted on a timely basis, they need to be accurate," and
"corrections are an exception and not the rule." (*Id.* at 795). Almost a year later, Plaintiff was
still submitting inaccurate WH-40s but argued that she believed she had 365 days to correct them
as long as the initial (inaccurate) one was timely submitted. (*Id.* at 389). On May 10, 2018, Ms.
Fernandez told her that this was incorrect and that according to Department policy, "you have up
to 365 days to submit a [WH-]40 not correct them . . . [and] a corrected [WH-]40 is the exception
and not the rule." (*Id.* at 796).

Regarding Plaintiff's argument that Department rules did not say whether initial time
reports needed to be accurate, the record indicates otherwise. Department policy explicitly states
that "[t]he *accurate* input of WHI hours is an important component of the agency's performance
and budget planning strategies." (A.R. 861) (emphasis added). Further, as early as 2017, Ms.
Fernandez told Plaintiff that WH-40s "need to be accurate" and that "corrections are an
exception and not the rule." (*Id.* at 795). Here, the Department specified eight instances in 2018
in which Plaintiff submitted inaccurate time records. (*Id.* at 149-50). To substantiate these
specifications, the Department submitted the WH-40s, and corresponding WebTA reports for
each incident. (*Id.* at 707, 740-67). Plaintiff does not argue that these records are incorrect, but
claims she believed her initial submissions could be inaccurate as long as they were corrected
within 365 days. (Docket No. 156 at 18). Given the evidence to the contrary, the AJ correctly
sustained these violations.

Plaintiff's argument that the AJ should have discredited Ms. Fernandez's testimony because she incorrectly characterized Plaintiff's WH-40s as routinely inaccurate in comparison to her peers is without merit. (Docket No. 156 at 19).  Specifically, Plaintiff argues that based on the Department's specifications, her reports were only inaccurate 20% of the time, which was not uncommon as Ms. Fernandez testified Plaintiff's co-workers' reports were only accurate "80% of the time." (*Id.*). There are three problems with this argument: (1) it was not presented to the AJ, so it has been waived; (2) the Department never stated that the specifications in Charge Four were exhaustive; and (3) it does not refute the AJ's finding that the Department proved the specifications by a preponderance of the evidence, it just refutes how common such violations are at the Department. *See infra* Section III.D.1.  As a result, the argument is insufficient to reverse the AJ's decision.

## ii.    Travel Vouchers

Defendant argues that the AJ correctly found that the Department had established rules regarding the filing of travel vouchers, that Plaintiff was aware of these rules, but that she violated them anyway. (Docket No. 155 at 25).  Plaintiff presents no argument in response. (*See generally* Docket No. 156 at 18-20).  According to Department policy, "a travel voucher for the preceding month's travel" must be submitted "no later than the 5th working day of the current month." (A.R. 851); (*see also id.* at 831) ("§ 301.52.7 WHEN MUST I SUBMIT MY TRAVEL CLAIM? . . . Within 5 working days after you complete your trip or period of travel") (capitalization in original).  Plaintiff was notified of this policy by e-mail on numerous occasions, (*see id.* at 247-56, 825-29), yet violated it in August 2018, September 2018, and October 2018, as specified in Charge Four, (*id.* at 806-11, 812-18, 819-26) (travel voucher records); (*see also id.* at 1035-36) (Ms. Fernandez testified that Plaintiff did not submit her travel

voucher for August 2018 until September 12, 2018); (*id.* at 825) (e-mail from Ms. Fernandez

notifying Plaintiff that her September 2018 travel voucher was submitted late); (*id.* at 1040-41)

(same); (*id.* at 1043) (Ms. Fernandez testified that Plaintiff did not submit her travel voucher for

October 2018 until November 8, 2018).  Therefore, there is no basis to overturn the AJ's

decision regarding Plaintiff's time reporting violations.

**iii.**    **Interview Documentation**

The final specifications under Charge Four relate to the procedures investigators must

follow to document their casework.  Defendant contends that there was substantial evidence that

Plaintiff knew she was required to keep a case diary that indicated when she conducted an

interview, what was said during the interview, and in what language the interview was

conducted, but failed to do so. (Docket No. 155 at 25-26).  In response, Plaintiff contends that

she satisfied this rule by writing "Sp." in her case diary when an interview was conducted in

Spanish.

Department rules state that "[a]ll case time data entries must be made on the 'Case Diary'

screen in the 'Investigative Support' module . . ." (*Id.* at 861).  The entries must include what

work was done and the time spent doing it. (*Id.* at 1051).  When the interviewer takes an

interview statement, it "shall be written in the first person and in the language of the employee"

interviewed. (*Id.* at 327).  If the interviewer does not speak the employee's language, he or she

may use the language line for translation as long as use of the line is noted in the interview

statement. (*Id.* at 1045-46).  Here, Plaintiff does not argue that she was unaware of these

requirements but claims she satisfied them by writing "Sp." on her interview statements when

they were conducted through the language line. (Docket No. 156).  However, Ms. Fernandez

testified that "Sp." "doesn't mean anything in the Wage and Hour world for us or for our

attorneys or for the public," and that it was not how investigators were taught to indicate use of the language line. (*Id.* at 1049). Plaintiff's argument that it should have been self-evident that this notation meant the interviews were conducted in Spanish via the language line is insufficient to rebut the AJ's finding that she violated Department policy. As a result, the AJ properly upheld Charge Four.[13]

Accordingly, the Court finds that the AJ's decision affirming Charge Four, that Plaintiff violated the Department's procedures, was supported by substantial evidence, was not an abuse of discretion, and was not arbitrary, capricious or contrary to law.

**B.    Nexus Between Charged Conduct and Efficiency of Service**

Defendant argues that the AJ was correct in holding that the Department established a nexus between Plaintiff's misconduct and the efficiency of the service because the violations involve a "lack of candor and sound judgment" that "strike directly at the agency's important law enforcement mission." (Docket No. 155 at 27). Plaintiff responds that there was no nexus because the Department "set up" Plaintiff for removal, "refused to ascertain the truth of the matters asserted by Employee A," and her alleged violations were "*de minimis*." (Docket No. 156 at 17, 21) (emphasis in original).

"To establish a nexus between an employee's misconduct and the efficiency of service, an agency must show, by a preponderance of evidence, that the Plaintiff's conduct is related to [her] job-related responsibilities such that removal promotes the efficiency of service." *Shaw*, 2017 WL 5508914, at *5 (citations and internal quotations omitted). This requires showing that

---

[13] Charge Four also specifies two instances when Plaintiff failed to document that she conducted interviews altogether. (A.R. 151-54). Plaintiff offers no argument as to why the AJ's finding that the Department proved these omissions was wrong, and the administrative record substantiates the finding. (*Id.* at 1686) (collecting evidence showing Plaintiff's use of the language line on September 19 and 27, 2018, without noting interviews took place in her case diary). As a result, there is no basis to disturb the AJ's finding against Plaintiff on these specifications.

the employee's conduct: "(1) affected h[er] or h[er] coworkers' job performance; (2) affected management's trust and confidence in the employee's job performance; or (3) interfered with or adversely affected the agency's mission." *Canada v. Dep't of Homeland Sec.*, 113 M.S.P.R. 509, 514 (2010).  Here, the AJ held that the charges against Plaintiff "involved, undisputedly, the [Plaintiff's] conduct at work and, were related to the agency's mission" of enforcing federal labor laws because when a violation is found the Department "can initiate legal action" against the employer. (A.R. 1690-91).  In support of this holding, the AJ referenced Ms. Rosado's testimony that if an investigator's records are inaccurate, "the agency can look really bad." (*Id.* at 1172).  This was sufficient to satisfy the Department's burden and Plaintiff's arguments in opposition do not warrant reversal since: (1) whether the agency should have further investigated Employee A's statements goes to proof of the charged conduct, not the nexus requirement; and (2) the alleged "de minimis nature of the [violations] does not negate the charge, but rather is one factor to be considered in assessing the penalty to be imposed." *Ceja v. Def. Logistics Agency*, 27 M.S.P.R. 531, 533 (1985).

Accordingly, the Court finds that the AJ's decision that Defendant established an appropriate nexus between the charged conduct and the efficiency of service was supported by substantial evidence, was not an abuse of discretion, and was not arbitrary, capricious or contrary to law.

## C.    Reasonableness of Punishment

Defendant argues that Ms. Rosado properly considered the *Douglas* factors, *see supra* § I.B n.7, in deciding to terminate Plaintiff and that the AJ's decision sustaining her removal should be affirmed. (Docket No. 155 at 27-28).  In response, Plaintiff argues that the penalty should be vacated because the charges are not supported by substantial evidence, the "infractions

are minor," and that, as to Charge Two, Plaintiff did not act intentionally. (Docket No. 156 at 23).

The standard of review for a penalty determination is "highly deferential." *Webster v. Dep't of Army*, 911 F.2d 679, 685 (Fed. Cir. 1990).  The Court may not "disturb the penalty" unless it is "totally unwarranted or grossly disproportionate to the misconduct." *Figueroa*, 423 F. Supp. 3d at 36 (citation and internal quotation omitted); *accord Babin*, 2021 WL 5860595, at *11 ("[t]his Court's review of a penalty determination is particularly deferential").  In reviewing the penalty, the AJ must ensure that the Department considered the twelve *Douglas* factors but need not engage in an "independent evaluation" of them. *Figueroa*, 423 F. Supp. 3d at 35.  "Whether the court would have selected a different penalty had it made the initial determination is irrelevant." *Shaw*, 2017 WL 5508914, at *6 (citations omitted).

Here, the AJ considered the *Douglas* factors and held that the penalty of removal was warranted because Plaintiff's misconduct was "serious and repeated." (A.R. 1702).  The AJ held that "[i]t is well-established that agencies are warranted in holding investigators, such as the [Plaintiff], to a higher standard of conduct, particularly when such conduct implicates questions of honesty and integrity." (*Id.*).  In support of this holding, the AJ considered Ms. Rosado's testimony that there were "no mitigating factors," but several aggravating ones, including, a loss of trust. (*Id.* at 1701).  Ms. Rosado testified that Plaintiff's level of experience also weighed heavily in favor of a harsher penalty since she was being "relied upon to train other investigators" and should have known better. (*Id.* at 1190-91).  While Plaintiff argues that her misconduct was "minor" and "technical in nature," (Docket No. 156 at 23), Ms. Rosado testified that "the Agency cannot run the risk of having somebody in the field that is not providing accurate information and jeopardizing the image of the Agency and" its reputation. (A.R. 1208).

- 32 -

The AJ agreed, holding that "[t]he Board is particularly sensitive to charges involving an agency's loss of trust where, as here, the position at issue involves law enforcement responsibilities." (*Id.* at 1631).  Having evaluated the arguments of both sides, as well as the administrative record in its entirety, the Court finds that the penalty imposed was not unreasonable.[14]

Accordingly, the Court finds that the AJ's decision affirming the penalty of removal was supported by substantial evidence, was not an abuse of discretion, and was not arbitrary, capricious or contrary to law.

## D.    Affirmative Defenses

In appealing her termination to the MSPB, Plaintiff raised three affirmative defenses: (1) discrimination based on race, sex and age; and (2) retaliation for (i) engaging in a protected EEOC activity, and (ii) engaging in protected union activity. (A.R. 1692).  Defendant argues that the AJ's rejection of these defenses was supported by substantial evidence and the only evidence Plaintiff offers to the contrary is her own self-serving statements. (Docket No. 155 at 29).  In response, Plaintiff argues that other comparable investigators who committed similar violations were not terminated, and that the AJ's holding that she failed to prove causation since there was no temporal proximity between her protected activity and the adverse employment decision was wrong. (Docket No. 156 at 24-26).

At the outset, the Court notes that its review of Plaintiff's affirmative defenses is limited to the administrative record.  Defendant has only moved for summary judgment on Plaintiff's appeal of the AJ's decision, and not on Plaintiff's independent causes of action for

---

[14] Plaintiff's citation to *Reid v. Dep't of Navy*, 118 M.S.P.R. 396 (2012), does not change this conclusion.  In *Reid*, the MSPB downgraded the penalty imposed because the misconduct alleged "was not out of the ordinary," and "was common." *Id.* at 411-12.  That is not the case here, where Ms. Rosado testified that, "there were no other employees that were engaged in the same conduct." (A.R. 1578).

discrimination, retaliation, and a hostile work environment under Title VII. (Docket No. 1 at 14-17).  Thus, those claims will proceed to trial, and Plaintiff's case will not be limited to the evidence and arguments previously presented in the administrative proceedings as the Court's review is here.

## 1.     Discrimination Based on Race, Sex and Age

Defendant contends that there is no basis for Plaintiff's discrimination claim besides her own written declaration, which was rebutted by live testimony from Ms. Rosado and Ms. Fernandez. (Docket No. 155 at 29).  In response, Plaintiff argues that she was treated "differently than seven similarly situated employees who were outside her protected class and/or who had not engaged in protected activity." (Docket No. 156 at 24).

Under 5 U.S.C. § 7701, an agency's removal decision "may not be sustained . . . if the employee or applicant for employment . . . shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title."  Section 2302(b) bars, among other things, discrimination based on race, sex and age. 5 U.S.C. § 2302; *see also* 42 U.S.C. § 2000e-16.  In rejecting Plaintiff's discrimination defense, the AJ correctly described the legal standard. (A.R. 1692-93).  Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the complaining party bears the initial burden of establishing "a violation by introducing direct evidence of retaliation or circumstantial evidence of a discriminatory motive." (A.R. 1693). Where, as here, there is no direct evidence of discrimination, Plaintiff may satisfy her burden using circumstantial evidence, such as: (1) "suspicious timing, ambiguous statements (oral or written), behavior toward or comments directed at other employees in the protected group;" (2) comparator evidence; or (3) "evidence that the agency's stated reason for its action is unworthy

of belief, a mere pretext for discrimination." (*Id.* at 1693) (citations and internal quotations omitted).

During the administrative proceedings, Plaintiff identified seven individuals that she believed were similarly situated to her, "change[d] their employee statements," "and/or modified case data and/or travel vouchers late, but were not disciplined or removed." (*Id.* at 364).   The AJ rejected these comparators because Plaintiff "failed to provide any evidence that these other employes were actually similarly-situated to her." (*Id.* at 1694).   In so holding, the AJ noted that Ms. Fernandez testified that the opposite was true, namely, that: (i) the individuals Plaintiff said submitted late travel vouchers but were not similarly punished did so only once; and (ii) the individuals Plaintiff said submitted untimely WH-40s did so far less frequently than Plaintiff, and their WH-40s were accurate 80% of the time. (*Id.* at 1090-91).   Plaintiff seizes on the latter point in her brief, arguing that the removal specifications for Charge Four allege that she only had to correct WH-40s for six out of 30 weeks, which equals a 20% error rate that is in line with Ms. Fernandez' testimony that her proposed comparators submitted accurate reports 80% of the time. (Docket No. 156 at 24).   However, this argument was not presented to the AJ, so it cannot be considered for the first time here. *See Lepore*, 759 F. App'x at 917.   Moreover, the argument incorrectly assumes that the Department searched Plaintiff's entire history of WH-40 submissions in coming up with the specifications for Charge Four, rather than the most recent ones as Defendant claims. (Docket No. 163 at 17).   Given the dearth of evidence on this argument in the administrative record, the Court finds that it is an insufficient basis to disturb the AJ's ruling on Plaintiff's discrimination defense.

Accordingly, the Court finds that the AJ's rejection of Plaintiff's Title VII discrimination defense was supported by substantial evidence, was not an abuse of discretion, and was not arbitrary, capricious or contrary to law.

## 2.      Retaliation

Plaintiff next argues that she was illegally retaliated against for engaging in protected EEOC and union activities. (Docket No. 156 at 25).  Specifically, Plaintiff contends that her termination was in direct retaliation for: (1) initiating EEOC counseling on December 3, 2018, and then filing a formal EEOC complaint on January 8, 2019, and (2) acting as a union shop steward from 2016-2018. (A.R. 361).  Defendant argues that the AJ's decision rejecting these defenses as too attenuated from the protected activities was correct and supported by substantial evidence. (Docket No. 155 at 29).  Based on the limited record before it, the Court agrees.

In considering Plaintiff's retaliation defense, the AJ correctly applied the same standard and burden-shifting framework used in evaluating her discrimination defense. (A.R. 1692-93). As to the EEOC retaliation claim, the AJ held that there was insufficient evidence to support a causal link between Plaintiff's protected activity and her removal on January 9, 2018. (*Id.* at 1695).  In support of this holding, the AJ noted that by the time Plaintiff began the EEOC counseling process in December 2018, she had already been ordered to attend a *Weingarten* meeting to discuss her misconduct and had been taken off investigative assignments. (*Id.* at 191, 1695).  Ms. Fernandez confirmed this and testified that the Department "already had begun the removal process sometimes in November [of 2018] and [she] learned of the EEO activity sometime in December." (*Id.* at 1071, 1428).  Thus, the AJ held that, "[o]ther than the fact the proposal notice was issued shortly after the appellant sought EEO counseling, I saw scant, if any, evidence in the record tending to show or support an inference of discriminatory intent." (*Id*. at

1695).  While Plaintiff argues that Ms. Fernandez's e-mails to Mr. Rosenblum expressing

frustration about Plaintiff's performance undermines her testimony and supports an inference of

discrimination, the AJ held that e-mails were "ambiguous" and without more did not carry

Plaintiff's burden. (*Id.*).  Plaintiff disagrees, but the Court must defer to the AJ's credibility

determinations on this limited record. *See Gale v. Napolitano*, No. 07-CV-5211 (DLI)(MDG),

2011 WL 809499, at *4 (E.D.N.Y. Mar. 2, 2011) ("An MSPB ALJ's determinations regarding

witness credibility are virtually unreviewable, since the determination of the credibility of the

witnesses is within the discretion of the presiding official who heard their testimony and saw

their demeanor") (citations and internal quotations omitted).[15]

    The same is true for Plaintiff's claim that she was retaliated against for engaging in

protected union activity.  Defendant argues that the AJ correctly rejected Plaintiff's retaliation

defense as speculative because "the union activity [she] referenced, had concluded many months

before the internal investigation was launched and the Agency began considering removing her."

(Docket No. 155 at 29).  Plaintiff responds that "[f]rom 2016 to 2018, McFall was either a union

representative or grievant herself in union proceedings in which Rosado acted as a deciding

official" and that Ms. Rosado "upheld the removal in retaliation" for this activity. (Docket No.

156 at 25).  The AJ held that Plaintiff submitted no independent evidence of retaliation, and the

proposed disciplinary action Ms. Rosado oversaw commenced "many months after the

appellant's participation in any union activity." (A.R. 1696).  The Court agrees.

---

[15] Plaintiff's citation to cases standing for the proposition that causation for retaliation can be proven by showing
close temporal proximity between a protected activity and the employer's conduct, (Docket No. 156 at 25), is
accurate, but ignores the bevy of other disciplinary actions the Department had already taken when Plaintiff filed her
EEOC complaint one month after initiating the EEOC counseling process. (A.R. 1695-97).  Therefore, there is little
evidence in the administrative record supporting Plaintiff's contention that she was only terminated on January 9,
2019, because of her formal EEOC complaint that was filed on January 8, 2019.

Plaintiff alleges that her union representation began in September 2016, but that she did not meet with Ms. Rosado for the first time until November 2017. (*Id.* at 361). The disciplinary process here did not begin until Fall 2018 and Plaintiff does not claim to have had any interaction with Ms. Rosado in the intervening year. Thus, there is no evidence in the administrative record indicating Ms. Rosado's decision to terminate Plaintiff was motivated by her union activity, which was almost a full year earlier, and the cases Plaintiff cites do not counsel otherwise. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 444 n.4 (2d Cir. 1999) (holding that, unlike here, the defendant "chose not to proffer a single non-retaliatory reason for [the adverse employment action]"); *Templeton v. First Tennessee Bank, N.A.*, 424 F. App'x 249, 251 (4th Cir. 2011) (finding that retaliation was plausible where, in the absence of an intervening event, Defendant refused to rehire Plaintiff two years after her resigning "her employment shortly after she complained of harassment"); *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003) ("a five-month gap between a protected activity and an adverse action would ordinarily be too great a time lapse to support an inference of causation based on timing alone.").

Plaintiff's argument that the "delay . . . is not dispositive because it was Rosado's first opportunity to retaliate against McFall," (Docket No. 156 at 26-27), ignores her misconduct in the time between Plaintiff's 2017 union activity and 2018 removal. During the intervening time, Plaintiff was charged with providing inaccurate information, lacking candor, failing to follow management instructions, and violating agency procedures. (A.R. 10-34). This is sufficient to break any purported causal link between her union activity with Ms. Rosado, and Ms. Rosado's subsequent termination decision. *See, e.g.*, *Rossbach v. Montefiore Med. Ctr.*, 19cv5758 (DLC), 2021 WL 930710, at *7 (S.D.N.Y. Mar. 11, 2021) ("Misconduct by a plaintiff qualifies as an

intervening event that defeats an inference of retaliation"); *accord Emanuel v. Gap, Inc.*, 19-CV-03617 (PMH), 2023 WL 5211007, at *11 (S.D.N.Y. Aug. 14, 2023) ("[p]laintiffs' misconduct, discovered during the regular course of an audit by [Defendant], constitutes an intervening event that broke the causal connection.").

Accordingly, the Court finds that the AJ's rejection of Plaintiff's Title VII retaliation defense was supported by substantial evidence, was not an abuse of discretion, and was not arbitrary, capricious or contrary to law.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment on Plaintiff's non-discrimination, civil service claim is granted and Count One of the Complaint is dismissed.  Plaintiff's independent claims of race discrimination, sex discrimination, imposition of a hostile work environment, and retaliation under Title VII (Counts Two, Three, Four and Five of the Complaint) remain.

The Clerk is respectfully directed to terminate the pending motion (Docket No. 154).

Dated:   May 28, 2024
         White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge